## ELECTION EXPENSES OF PROBATE JUDGE UNDER THE CORRUPT PRACTICES ACT.

Common Pleas Court of Summit County.

JAMES J. BAKER v. LEWIS D. SLUSSER.

Decided, 1917.

*Elections—What Constitutes the Limit of Expenditure Which May be Made by a Candidate for Probate Judge—Forfeiture of Office for Violation of this Act Can be Decreed Only Upon Conviction of the Offense Charged.*

1. Under the section of the corrupt practices act which limits the amount which may be expended by candidates at an approaching election, the office of probate judge falls within the provision which fixes such expenditure at a sum not exceeding $500 with $5 additional for each one hundred votes in excess of 5,000 cast at the last preceding state election.

2. The court of common pleas is without power to declare forfeiture of an office for violation of this act until the accused has been convicted in due form as provided by statute.

McCLURE, J.

Lewis D. Slusser was a candidate for and secured the nomination by the Republicans of Summit county for the office of probate judge of said county at the primary election held therein on August 8, 1916. On August 17, 1916, he filed with the clerk of the board of deputy state supervisors of elections of said county his expense account, verified under oath as required by the statute, showing his expenditures in said election to have been the sum of $746.47. By virtue of said nomination his name was placed upon the judicial ticket for the office of probate judge to be voted for at the general election held November 7, 1916, and as a result of said election he received 11,672 votes out of a total vote cast for probate judge of 25,645, giving him a plurality of 4,784 votes over his nearest competitor.

On November 17, and within the period provided by law, he filed with the board of deputy state supervisors of elections of his county his verified statement of expenses of said election showing the amount to be $251.09.

Thereupon there was issued to him a certificate of election and he was by said board of deputy state supervisors of elections declared to be the duly elected probate judge of said county.

From this declaration of the board, the contestor, James J. Baker, who is a resident and an elector of said county voting at said election, brings this proceeding in this court, under favor of Sections 5148-5153, G. C., on appeal from the declaration of said board of deputy state supervisors of elections, alleging that the several amounts expended by said Lewis D. Slusser are in excess of the amount allowed by law to be expended for the purpose of promoting and securing his election as probate judge as prescribed in Sections 5175-29, G. C.

The proper notice of said appeal and of the taking of depositions in support of the same were served upon the contestee, said depositions were afterwards taken in pursuance of said notice and the matter also came on further to be heard upon oral testimony before this court.

It is the contention on behalf of the contestor that there has been a violation of the so-called "corrupt practice act" (Sections 5175-1 to 5175-29$a$-29$b$, G. C.) whereby the election of the contestee should be declared void in this, that he has exceeded in amount the limit of expenditure as prescribed in said act. The sections to which attention is particularly directed are Sections 5175-16 to 5175-29, 5175-29$a$ and 5175-29$b$, G. C.

The contestee upon his part claims, first, that under a proper construction and interpretation of Section 5175-29, G. C., which is the provision relating to the amount of expenditures by persons seeking public office, there has been no violation of the provisions of said statute as alleged by the contestor. Secondly, if there has been a violation of the provisions of said statute, as alleged, this court is without authority in this proceeding to declare the election of contestee void, for the reason that an accusation involving the criminal charge of a corrupt practice under Section 5175-29, G. C., must be dealt with according to the rules of procedure applicable to like offenses and the guilt if any determined and penalty inflicted as provided in Section 13323-1, G. C.

Section 5175-29, G. C., undertakes to limit the amount which may be expended by candidates for elective offices in the state ranging from governor down through the various grades (of public office) and after specifying state offices, representatives in Congress and presidential electors, judge of the court of appeals, and state senators, names the judge of common pleas, probate or insolvency court, fixing the limit of their expenditure at $500. Following this is the state representative with a limit of $350 and then occurs this language:

"By a candidate for any other public office to be voted for by qualified electors of a county, city, town or village or any part thereof, if the total number of votes cast therein for all candidates for the office of governor at the last preceding state election be in excess of five thousand the sum of five dollars for each one hundred in excess of such number may be added to the amounts above specified. Any candidate for a public office who shall expend for other purposes above mentioned an amount in excess of the amounts herein specified shall be guilty of a corrupt practice."

The claim of the contestor is that a classification is affected by this provision which separates state officers from county officers and that the office of probate judge being a state office the final provisions of the section allowing an increase of five dollars in expenditures per hundred in counties where the vote for governor at the last preceding state election was in excess of five thousand can not apply to the office of probate judge unless it be also held to be applicable to other state officers which leads to exaggerated results as to governor and other state offices which were clearly not in the contemplation of the Legislature.

The effort of the court in arriving at a construction to be given to a statute should be to arrive at such a construction as will be consistent with the intent to be derived from the language used giving effect to all provisions and securing a harmonious result which shall satisfy the requirement as to reasonableness, uniformity and impartiality demanded by the Constitution of the state.

Having this in mind and having also in mind the object sought to be attained by this statute the court is of the opinion

that irrespective of the question whether or not the office of probate judge is a state office, the Legislature was dealing with the office in the relation it sustains to the electorate which is, of course, confined to the county unit and that the provisions by which it was designed to afford additional amounts of expenditures to other county and municipal officers applies as well to the office of probate judge.

It is to be noted that the provisions of Sections 5149, *et seq.*, relating to contests and which is invoked by the contestor in this action classified the office of probate judge for the purpose of said statute as a county office.

The amount which would therefore be available for the expenditure of a candidate for probate judge of Summit county in the year 1916 would be the sum of five hundred dollars plus the sum of five dollars per hundred for all excess above five thousand in the votes cast at the last preceding state election, or approximately $1,674. The total amount shown to have been expended by Lewis D. Slusser in securing his nomination and election being conceded to be $997.56, is less than the above sum and is consequently within the lawful limitation fixed by said statutes under the construction given it by this court.

A more important and vital question is presented by the second objection of the contestee which goes to the jurisdiction of this court to declare a forfeiture of office in this proceeding, which is, of course, its sole object. It is said that this is a proceeding to try the title to an office and not one seeking a forfeiture, but while the question is not without difficulty it is plain that the thing sought to be accomplished is to deprive the contestee of the office to which he would otherwise be entitled by reason of his alleged violation of a statute defining a corrupt practice without having first established his guilt by the ordinary methods of prosecution and conviction applicable to like offenses and in accordance with the provisions of Section 13323-1, G. C., which reads as follows:

"Any person convicted of a corrupt practice under this act shall be fined not less than one hundred dollars and not more than five hundred dollars and imprisoned in the county jail

not to exceed six months, or both; and if he shall have been elected to office, he shall, in addition thereto, forfeit such office.''

"The rule is certain," said Lord Mansfield, "that where a statute creates a new offense by prohibiting and making unlawful anything which was lawful before, and appoints a specific remedy against such new offense (not antecedently unlawful) by a particular sanction and particular method of proceeding, that particular method must be pursued and no other." *Lewis Southerland Stat. Constr.* (2d Ed.), Section 491, page 917.

It was said in the case of *Thompson* v. *Redington*, 92 Ohio St., 101:

"That elections belong to the political branch of the government and that any authority conferred by the General Assembly of Ohio under Article II, Section 21 of the Constitution, to try contested elections is not judicial power within the meaning of Article IV, Section 1 of the Constitution, which vests the judicial power of the state in the courts, is no longer an open question in Ohio."

And again at page 109:

"The General Assembly has the authority under Article II, Section 21, to determine by law before what authority and in what manner the trial of contested elections shall be conducted and that the mode and methods provided by the statute for such contest are exclusive."

This doctrine was announced in the early case of *State* v. *Marlow*, 15 Ohio St., 154, and has since been recognized, notably in *State* v. *Ganson*, 58 Ohio St., 317.

The case of *Prentiss* v. *Dittmer*, 93 Ohio St., 314, is urged as authority for the position of the contestor herein, but in that case the provisions of Section 5175-26, G. C., provided by its very terms that the commission of any of the acts prohibited should operate as a forfeiture of the office.

In the case at bar there is no such provision attached to Section 5175-29, G. C., and hence, as the court is without power to exercise its judicial functions but must act solely in its *quasi*-judicial capacity, it can not act otherwise than as in such stat-

utes it is provided, which results in this: that no forfeiture of office can be decreed until and except in accordance with the provisions of Section 13323-1, G. C., it has been ascertained that the offense which is alleged has been in fact committed. This view is further supported by *State* v. *Ganson, supra.*

It was said in the case of *State* v. *Belknap, supra*:

"That the choice of the electors as expressed by their ballots should not be tainted with fraud and corruption is of the utmost importance to the electors and to the state, and such laws as the one we are now considering, enacted for the purpose of enforcing the purity of the ballot, are wise and should be rigidly enforced; but it is of equal importance, both to the electors and to the person elected, that the person rightfully elected by the people should be permitted to perform the duties of the office when he has been legally elected.

"The Legislature, in enacting the provisions under consideration, wisely provided a speedy and efficient means of determining the right of a person elected to an office who may be charged with improper conduct in securing his election. It will not do to brush aside the proceedings provided by this act for a forfeiture of the office as mere technicalities not controlling on the courts and proceed as a court of equity to deprive the party elected by the electors of his office. *State* v. *Deputy State Supervisors,* 20 C.C.(N.S.), 190; 3 Ohio App. Rep., 190, 201."

The court has reached the conclusion that, sitting as a tribunal of *quasi*-judicial functions clothed with the powers only which are conferred by the Constitution and laws relative to election contests, that in the absence of power expressly conferred by the Legislature to decree a forfeiture of office for the violation of the provisions of Section 5175-29, G. C., that the only method by which this can be accomplished is by resort to the provisions of Section 13323-1, G. C., and that this action must be taken antecedent to the appeal in an election contest.

The appeal of the contestor will therefore be dismissed at his costs.